**SANTA FE PAC. R. CO. et al. v. ICKES,**
Secretary of the Interior, et al.

No. 23477.

District Court of the United States for the
District of Columbia.

May 21, 1945.

Lawrence Cake, of Washington, D. C.,
for plaintiffs.

Harry M. Edelstein, Asst. Sol., Department of the Interior, of Washington, D. C.,
for defendants.

DUNCAN, District Judge.

This suit is brought in the United States District Court for the District of Columbia to enjoin the defendants from rejecting the selection of certain lands described in the petition under a grant from the Government to the plaintiff, Sante Fe Pacific Railroad Company, and its predecessors pursuant to an act of Congress approved July 27, 1866, c. 278, 14 Stat. 292.

The Sante Fe Pacific Railroad Company is a corporation organized under an act of Congress approved March 3, 1897, c. 374, 29 Stat. 622, and is the lawful successor to the Atlantic and Pacific Railroad Company, a corporation, created and organized under an act of Congress dated July 27, 1866, c. 278, 14 Stat. 292. Plaintiff, Aztec Land and Cattle Company, Limited, is a corporation organized and existing under the laws of the State of New York. Defendant Harold L. Ickes is the Secretary of the Interior; defendant Oscar L. Chapman is the Assistant Secretary of the Interior; defendant Fred W. Johnson is the Commissioner of the General Land Office of the United States. The amount involved is in excess of $3,000.

The matter is before this court on motions by both plaintiffs and defendants for summary judgment, each alleging that there is no genuine issue as to any material fact. No answer was filed by the defendants.

The Santa Fe Pacific Railroad Company is the successor in interest to the Atlantic and Pacific Railroad Company and is fully vested with all the rights of the Atlantic and Pacific Railroad Company under the Act of March 3, 1897, 29 Stat. 622, in and to the lands in controversy.

By the Act of July 27, 1866, the United States provided: for the grant of a right-of-way and necessary appurtenant ground for railroad purposes "for the purpose of aiding in the construction of said railroad and telegraph line", for a grant of all the odd-numbered sections of public land not mineral and not reserved, sold, granted or otherwise appropriated, and free from preemption or other claims or rights within the limits of forty miles on each side of the line of railroad as definitely located through the territories of the United States.

Said grant also provided that if any of the lands so granted were found at the time of the definite location of the railroad to have been previously granted, sold, reserved, occupied by homestead settlors, or pre-empted, or otherwise disposed of, the grantee should have the right to select other odd-numbered sections, in lieu of the sections lost, not more than 10 miles beyond the first designated limits of the grant.

The limits designated within the forty miles on each side of the railroad are known and described as the "primary" or "place" limits of the grant; and the odd-numbered sections within those limits as "primary" or "place" lands. The area within the ten-mile limits of the grant, adjoining the forty-mile place limit as aforesaid, are known as the "indemnity" limits of the grant, and the odd-numbered sections within those extended limits of the indemnity lands and the selections made within those extended limits in lieu of the loss in the place limits of the grant, are known as "indemnity" selections.

In 1872 the Atlantic and Pacific Railroad Company filed its map of definite location and thereafter the railroad was constructed and approved, and the rights of the railroad company to the lands granted became vested and determined. The grant, as finally fixed, extended along the line of the railroad from a point in what is now the State of New Mexico near Ysleta, through what is now the states of New Mexico and Arizona, to the western boundary of Arizona at the Colorado River.

In February 1886 the Atlantic and Pacific Railroad Company by contract sold to the plaintiff, the Aztec Land and Cattle Company, Limited, for a consideration of fifty cents per acre, approximately 1,058,560 acres of land within the limits of the grant in the territories of Arizona and New Mexico comprising all the odd-numbered sections within described boundaries, the said land being described and designated by section, township and range.

At that time the land was unsurveyed, and part of the land described was within the "place" limits of the grant, and a part within the "indemnity" limits. The Aztec Land and Cattle Company, Limited, paid to the Railroad Company $500,000 for 1,000,000 acres. Subsequently, in 1886 and 1894, so much of the lands sold aforesaid as was then surveyed, amounting to 576,701.91 acres, was conveyed by the Atlantic and Pacific Railroad Company to the plaintiff, the Aztec Land and Cattle Company, by deeds which were duly recorded in the counties where the lands were located.

In 1905 the plaintiff, the Santa Fe Pacific Railroad Company, in which had been confirmed all the interests of the Atlantic and Pacific Railroad Company by the act of March 3, 1897, executed its quitclaim deed to the Aztec Land and Cattle Company, Limited, to 423,270.35 acres, being the remainder of the 1,000,000 acres paid for under the contract of sale executed by its predecessor in 1886. In the quitclaim deed the land—the 423,270.35 acres—was described by section, township and range. The lands described in such quitclaim deed and in controversy in this proceeding amounted to 98,690.83 acres and lie within the indemnity limits of such grant.

In 1887 the Atlantic and Pacific Railroad Company made and filed with the Secretary of the Interior, a selection of the lands in the "indemnity" limits of the grant for the purpose of satisfying losses in the "place" limits of the grant. At that time the lands in the indemnity limits of the grant had not been surveyed and for that reason, the Secretary of the Interior held that the lands were not available for selection, and rejected the selection.

It is recited in the order of the Assistant Secretary of the Interior upholding the action of the Land Office in rejecting the selection of the lands here in controversy that a survey of all of said lands except 480 acres has been made. That such surveys were made in 1896, 1918, 1922, 1936 and 1939 and official plats filed in the Land Office.

On August 17, 1898, all of the lands in the indemnity limits subject to selection were withdrawn by Executive Proclamation as of that date, No. 18, 30 Stat. 1780, for a Forest Reserve, described as the "Black Mesa Reserve," pursuant to Section 24 of the Act of March 3, 1891, 26 Stat. 1096, and said lands are now included within the exterior bounds of what is known as the Coconino and Sitgreaves national forests.

Plaintiff alleges that at the time of the withdrawal of said lands on August 17, 1898, and for some time prior thereto, and at all times since then, the losses in the "primary" or "place" limits of said grant exceeded the surveyed lands within the "indemnity" limits of the grant available for selection, and that to that extent, there has been a deficiency in the grant in excess of 100,000 acres, since some time prior to August 17, 1898.

On September 18, 1940, pursuant to Section 321 (a) and (b), c. 722, 54 Stat. 954, 49 U.S.C.A. §§ 65, 66, including Section 321, Title III, Part II thereof,[1] the plaintiff

[1] "Sec. 321. (a) Notwithstanding any other provision of law, but subject to the provisions of sections 1(7) and 22 of the Interstate Commerce Act, as amended, the full applicable commercial rates, fares, or charges shall be paid for transportation by any common carrier subject to such Act of any persons or property for the United States, or on its behalf, except that the foregoing provision shall not apply to the transportation of military or naval property of the United States moving for military or naval and not for civil use or to the transportation of members of the military or naval forces of the United States (or of property of such members) when such members are traveling on official duty; and the rate determined by the Interstate Commerce Commission as reasonable therefor shall be paid for the transportation by railroad of the United States mail: Provided, however, That any carrier by railroad and the United States may enter into contracts for the transportation of the United States mail for less than such rate: Provided further, That Section 3709, Revised Statutes (U.S.C., 1934 edition, title 41, sec. 5), shall not hereafter be construed as requiring advertising for bids in connection with the procurement of transportation services when the services required can be procured from any common carrier lawfully operating in the territory where such services are to be performed.

"(b) If any carrier by railroad furnishing such transportation, or any predecessor in interest, shall have received a grant of lands from the United States to aid in the construction of any part of the railroad operated by it, the provisions of law with respect to compensation for such transportation shall continue to apply to such transportation as though subsection (a) of this section had not been enacted until such carrier shall file with the Secretary of the Interior, in the form and manner prescribed by him, a release of any claim it may have against the United States to lands, interests in lands, compensation, or reimbursement on account of lands or interests in lands which have been granted, claimed to have been granted, or which it is claimed should have been granted to such carrier or any such predecessor in interest under any grant to such carrier or such predecessor in interest as aforesaid. Such release must be filed with-

Santa Fe Pacific Railroad Company filed with the Secretary of the Interior a release under the rules and regulations issued by the Secretary of the Interior, by which it released to the United States "any and all claims of whatever description to lands, interests therein, compensation or reimbursement therefor on account of lands or interests granted, claimed to have been granted, or claimed should have been granted by any act of the Congress to Santa Fe Pacific Railroad Company or to any predecessor in interest in aid of the construction of any portion of its railroad."

The Company, reserved from the provisions of the release, *all lands sold by the company to innocent purchasers for value prior to September 18, 1940,* and in compliance with the regulations prescribed by the Secretary under Section 321(b) of the Transportation Act of 1940, filed a list of all innocent purchasers for value to whom said Santa Fe Pacific Railroad Company or its predecessor Atlantic and Pacific Railroad Company had sold any of the unpatented lands within the limits of the grant prior to September 18, 1940 with the description of such lands so sold.[2]

On June 26, 1942, the plaintiff Santa Fe Pacific Railroad Company filed its selection in the form prescribed by the regulations of the Secretary of the Interior for issue of patent to lands sold to the Aztec Land and Cattle Company, Limited, described aforesaid, as an innocent purchaser for value prior to September 18, 1940, and excepted from the release filed by the Santa Fe Pacific Railroad Company aforesaid.

On April 8, 1943 the defendant Fred W. Johnson as Commissioner of the General Land Office rejected the application aforesaid, on the ground that: *"the land had not been ascertained and identified so that the railroad acquired any interest in specific land which it could convey prior to the filing of its release and that, therefore, its transferee is not protected under the saving clause of section 321 (b) of the Transportation Act."* (Emphasis supplied.)

Thereafter an appeal was taken to the Secretary of the Interior from the decision of the Commissioner of the Land Office rejecting said application, and on January 8, 1944, the defendant Chapman, as Assistant Secretary of the Interior, acting for the defendant the Secretary of the Interior, af-

in one year from the date of the enactment of this Act. Nothing in this section shall be construed as requiring any such carrier to reconvey to the United States lands which have been heretofore patented or certified to it, or to prevent the issuance of patents confirming the title to such lands as the Secretary of the Interior shall find have been heretofore sold by any such carrier to an innocent purchaser for value or as preventing the issuance of patents to lands listed or selected by such carrier, which listing or selection has heretofore been fully and finally approved by the Secretary of the Interior to the extent that the issuance of such patents may be authorized by law."

| [2] "Arizona, G. and S. R. M. | | Area | |
|---|---|---|---|
| T. 13 N., R. 9 E., secs. | 5, 7, 9 ................... | 1,862.08 | acres |
| T. 14 N., R. 9 E., secs. | 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35 ............ | 10,993.07 | " |
| T. 14 N., R. 11 E., secs. | 33, E½; 35, SW¼ (unsurveyed) .... | 480.00 | " |
| T. 13 N., R. 12 E., secs. | 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35 ............ | 11,802.56 | " |
| T. 14 N., R. 12 E., secs. | 3, 5, 7, 9, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35 ................. | 10,134.32 | " |
| T. 15 N., R. 12 E., secs. | 31, 33 ..................... | 1,458.08 | " |
| T. 13 N., R. 13 E., secs. | 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35 ............ | 11,849.78 | " |
| T. 14 N., R. 13 E., secs. | 19, 21, 29, 31, 33 ................. | 3,439.44 | " |
| T. 13 N., R. 14 E., secs. | 19, 21, 23, 25, 27, 29, 31, 33, 35 ...... | 5,736.51 | " |
| T. 13 N., R. 15 E., secs. | 19, 21, 23, 25, 27, 29, 31, 33, 35 ...... | 5,717.59 | " |
| T. 12 N., R. 16 E., secs. | 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35 ................. | 9,256.84 | " |
| T. 12 N., R. 17 E., secs. | 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35 ................. | 8,465.20 | " |
| T. 10 N., R. 20 E., secs. | 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23 .. | 7,469.47 | " |
| T. 11 N., R. 21 E., secs. | 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35 ................. | 10,025.89 | " |
| | Total ..................... | 98,690.83 | acres. |

firmed the decision of the Commissioner of the General Land Office.[3]

In their complaint plaintiffs aver that such lands [1] are within the "indemnity" lim-

---

[3] "United States
Department of the Interior
Office of the Secretary
Washington

A. 23630.

January 8, 1944
"F"

Atlantic and Pacific Railroad Company Santa Fe Pacific Railroad Company, and Aztec Land and Cattle Company, Ltd.

Phoenix 080632
Application for patent under Transportation Act of 1940 rejected.
Affirmed.

Appeal from the General Land Office

\* \* \* \* \* \* \* \* \* \* \* \* \*

"This is an appeal by the Santa Fe Pacific Railroad Company from the decision of the Commissioner of the General Land Office of April 8, 1943 rejecting application for patent, Phoenix 080632, to 98,-690.83 acres of land in Navajo and Coconino Counties, Arizona.

"The land in question is within the exterior boundaries of the Black Mesa Forest Reserve established by an Executive proclamation, dated August 17, 1898, pursuant to section 24 of the act of March 3, 1891, 26 Stat. 1095, now the Coconino and Sitgreaves National Forests, and was included in the indemnity limits of the grant of land to the Atlantic and Pacific Railroad Company under the act of July 27, 1866, 14 Stat. 292, which was confirmed in its successor in interest, the Santa Fe Pacific Railroad Company, by the act of March 3, 1897, 29 Stat. 522.

"On June 20, 1887, the Atlantic and Pacific Railroad Company filed an indemnity selection under the act of July 27, 1866, which included all of the land described in the pending application for patent (Prescott 1), but it was rejected by the General Land Office because the land was unsurveyed and therefore not subject to selection. The Department upheld the Land Office decision (8 L.D. 307), and the selection was finally cancelled on July 18, 1893 ('F' Docket 6-5804, November 25, 1912, Miscellaneous File No. 278286). No attempt to select this indemnity land has since been made although official surveys covering all but 480 acres of it were made and the official plats of the surveys were filed with the Land Office in 1896, 1918, 1922, 1936 and 1939.

"On December 18, 1940, the Santa Fe Pacific Railroad Company and the Atchison, Topeka and Santa Fe Railroad Company, operator of the line of railroad, filed releases of all claims arising from any land grant in aid of the construction of a railroad in accordance with section 321(b),

Part II, Title III, of the Transportation Act of 1940, 54 Stat. 954 [49 U.S.C.A. § 65]. These releases excepted lands sold to innocent purchasers for value prior to September 18, 1940, lands embraced in selections made and approved by the Secretary of the Interior prior to September 18, 1940, and lands already patented or certified to the grantee. The releases were approved on March 1, 1941. As required by departmental regulations dated October 10, 1940 (43 CFR 273.61–273.67), the Santa Fe Pacific Railroad Company also filed a list of land and persons alleged to have become innocent purchasers of specific portions of the listed land prior to the effectiveness of the Transportation Act on September 18, 1940. This list included the lands in question and named the Aztec Land and Cattle Company as its purchaser.

"Thereafter, on June 26, 1942, the Santa Fe Pacific Railroad Company filed its application for patent to the land, alleging that this land was sold to the Aztec Land and Cattle Company, Ltd., in 1886. The contract offered to support this allegation, dated February 3, 1886, contains the promise of the Atlantic and Pacific Railroad Company to sell the Aztec Land and Cattle Company, Ltd., certain tracts of land located in Apache and Yavapai Counties, Territory of Arizona, estimated to contain approximately 1 058 560 acres for a consideration of $529,280, and bound the railroad to obtain patents to the said land from the United States and to convey by warranty deed within a period of two years from the date of the contract. A quitclaim deed dated November 7, 1905, offered as further evidence of the alleged sale, was entered into between the Santa Fe Pacific Railroad Company, as successor in interest to the Atlantic and Pacific Railroad Company, and the Aztec Land and Cattle Company, Ltd. It re-

[1] See note 1 on page 723.

its of the grant and are non-mineral, public lands not reserved, sold, granted or otherwise lawfully appropriated, and free from pre-emption or other claims or rights; that the withdrawal of the said lands so described was void and ineffective because at the time of said withdrawal there was a large deficiency in the grant, and the said lands were then and have ever since been appropriated to satisfy losses in the primary or place limits of the grant; and that the release filed by plaintiff, Santa Fe Pacific Railroad Company is not applicable to the said lands because the said lands were expressly excepted therefrom, having been sold prior to September 18, 1940 to plaintiff, Aztec Land and Cattle Company, Ltd., an innocent purchaser for value.

Plaintiffs further contend that the action in rejecting the selection and application for patents thereto "is based on erroneous construction of the applicable laws and is arbitrary and beyond their authority" and is "in violation of plaintiffs' vested rights and casts a cloud on plaintiffs' title and right to the lands in question".

The sole question for determination is whether or not the Secretary of the Interior had a right under the law to reject the Company's selection on the ground that

---

cites that on May 12, 1886, and May 25, 1894, the Atlantic and Pacific Railroad Company conveyed to the Aztec Land and Cattle Company, Ltd., a portion of the lands described in the contract of February 5, 1886, amounting to 576,701.91 acres and that said Aztec Land and Cattle Company, Ltd., was entitled to receive conveyance of an additional 423,298.09 acres of land; and contains the Santa Fe Pacific Railroad Company's release and quitclaim to the Aztec Land and Cattle Company, Ltd., for a consideration of $1, of all of its right, title and interest to certain land described by township, range and section, located in the counties of Navajo and Coconino, in the Territory of Arizona, and estimated to contain 423,270.35 acres. The Santa Fe Pacific Railroad Company relies upon the foregoing to establish its contention that the Aztec Land and Cattle Company is an innocent purchaser for value of the land included in the application for patent within the meaning of the second 'provision of the saving clause of section 321(b) of the Transportation Act of 1940 which provides:

"'* * * Nothing in this section shall be construed * * * to prevent the issuance of patents confirming the title of such lands as the Secretary of the Interior shall find have been heretofore sold by any such carrier to an innocent purchaser for value * * *.'"

"In his decision of April 8, 1943, the Commissioner rejected the application on the ground that the land had 'not been ascertained and identified so that the railroad acquired any interest in specific land which it could convey prior to the filing of its release and that, therefore, its transferee is not protected under the saving clause of section 321(b) of the Transportation Act. The Commissioner also noted the existence of certain forest homestead entries and other adverse claims to the lands covered by the application.

"On this appeal appellant contends that the Commissioner erred (1) in failing to determine whether or not at the time of the withdrawal there were losses in the place lands granted to the Atlantic and Pacific Railroad Company of such extent that all of the indemnity land was and has since been required to replace these losses; (2) in failing to determine to what extent there are intervening or superior adverse claims to any of the land in question; and (3) in determining that appellant is not entitled to a patent under the provisions of the Transportation Act of 1940.

"A finding by the Commissioner that all of the indemnity land was required to replace losses in the place limits of the grant at the time of the withdrawal would be immaterial for the reason that the right of the United States to withdraw the land is not in issue. The question to be decided concerns the effect of appellant's voluntary relinquishment of all claims to the land, which is in no way affected by the fact that the indemnity land relinquished did or did not exceed losses in the place lands. Likewise, a determination of the extent and validity of adverse claims in this land is not material unless and until appellant's claim has otherwise been established.

"At the time of the compromise settlement between the Santa Fe Pacific Railroad Company and the Aztec Land and Cattle Company the land had not been surveyed. Most of the land has since been surveyed, but the railroad company never exercised its right to select this land. It follows that the railroad's right to select the lands was relinquished by the filing of the release and that neither the railroad nor anyone claiming through the railroad has any right to a patent. Santa Fe Pacific Railroad Company, A. 23646, decided this day.

"The decision of the commissioner is affirmed.

"(Sgd) Oscar L. Chapman,
"Assistant Secretary."

the land had not been ascertained and identified and for that reason the Company had acquired no interest in specific land which it could convey prior to the filing of the release. If the Company did have an interest in the specific land which it could convey, then the Secretary was not justified under the law in rejecting the selection on the ground for which he did reject it.

There seems to be no controversy as to any substantial fact—and as the defendants did not file any answer to plaintiffs' complaint, the allegations thereof may be taken as true. Defendants rest their case on such admitted facts and the Department's findings and records made a part of the record.

■ The location of the railroad was in compliance with the provisions of the grant and the proposal was converted into a contract, as to which the Company by performing its part became entitled to performance by the Government. Payne v. Central Pacific R. Co., 255 U.S. 228 loc. cit. 236, 41 S.Ct. 314, 65 L.Ed. 598, loc. cit. 602; United States v. Northern Pacific R. Co., 256 U.S. 51 loc. cit. 64, 41 S.Ct. 439, 65 L. Ed. 825 loc. cit. 828; Burke v. Southern P. R. Co., 234 U.S 669, 34 S.Ct. 907, 58 L.Ed. loc. cit. 1527.

■ Immediately upon the establishment of the railroad and the acceptance thereof in accordance with the Act of July 27, 1866, and the filing of official plats and surveys, the title to the odd-numbered sections on the place limit not otherwise disposed of at the time of the grant, were vested in the company. Id.

■ It is alleged, and not denied by defendants, that at the time of the withdrawal of such land by Executive Order on August 17, 1898, and placing it in the forest reserve, there was a deficiency of sections in the indemnity limit to compensate for losses in the place limit. For the purpose of this motion, that allegation will be accepted as true. The order, therefore, was void as to those who are entitled to make selections in the indemnity limit. Payne v. Central Pacific R. Co., 255 U.S. 228 loc. cit. 236, 41 S.Ct. 314, 65 L.Ed. 598 loc. cit. 602; United States v. Northern Pacific R. Co., 256 U.S. 51 loc. cit. 64, 41 S.Ct. 439, 65 L.Ed. 825 loc. cit. 828; Burke v. Southern P. R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. loc. cit. 1527.

In view of the ground upon which the Secretary based his rejection, that question is not material to the disposition of this case and defendants do not contend that it is.

Defendants contend that the company had but an inchoate interest in the indemnity limit prior to the time of survey and identification, which was a mere "float" and not susceptible of identification or sale, and that the sale by the Atlantic and Pacific Railroad Company, and later the quitclaim deed executed by its successor the Santa Fe Pacific Railroad Company, conveyed no interest in the specific lands to the plaintiff the Aztec Land and Cattle Company, Ltd.

The proposal, Act of 1866—was converted into a contract by its acceptance, i. e., by building the railroad. The railroad performed its part and it was entitled to have the Government perform its part— title to the lands in the place limit vested in the Company upon the filing of map showing location—those in indemnity limit upon selection—with respect to each, when the right to such lands has been earned, the obligation of the Government arises.

■ The provisions of the grant relating to indemnity lands was as much a part of the grant and the contract as the one relating to the land in the place limit. United States v. Northern Pacific R. Co., 256 U.S. 51 loc. cit. 64, 41 S.Ct. 439, 65 L.Ed. 825 loc. cit. 828; Payne v. Central Pacific R. Co., 255 U.S. 228 loc. cit. 256, 41 S.Ct. 314, 65 L.Ed. 598 loc. cit. 602.

■■ I believe there is no dispute that it is the general rule of law that no right attaches to any specific land within the indemnity limits of the grant until it is selected, and there can be no selection until there has been an identification of the lands by survey. That of course, is common sense as well as the law. The grantee could certainly not be entitled to any portion of the indemnity land until all of the sections within the place limit had been exhausted. So long as there was an excess of lands in the indemnity limit to compensate for the losses in the place limit, it would be necessary to make a definite selection.

There is an exception to this general rule, however. The general rule has never been applied as between the Government and the grantee where the lands available

for indemnity were not sufficient for the purpose of compensating for the loss sustained in the place limit. Its only application has been where either the rights of the sellers were involved, or the lands available for indemnity exceeded the losses, thereby making it essential that there be a selection and identification of the particular sections sought to be appropriated to the grant. United States v. Northern Pacific R. Co., 256 U.S. 51, 65, 41 S.Ct. 439, 65 L.Ed. 825, 828; St. Paul & Pacific R. Co. v. Northern Pacific R. Co., 139 U.S. 1, 11 S. Ct. 389, 35 L.Ed. 77.

■ Admitting arguendo that the contract executed by the Atlantic and Pacific Railroad Company in 1886, before the land in the indemnity limit was surveyed, and before losses in the place limit exceeded the land available in the indemnity limit was surveyed, did not convey any interest in specific land, and the company at that time had only the right of selection of sections of land in the indemnity limit—when such sections were identifiable as the result of a survey—it did sell for $500,000— and got the money—whatever right it had in 1,000,000 acres of land, including the land in controversy here.

Subsequent to that contract, by authority of the Act of Congress of March 3, 1897, the interest in the lands and the right to select other lands was confirmed in its successor, the plaintiff Santa Fe Pacific Railroad Company. Some time—and that time is not apparent from the record—between the time of the grant and the year 1898, it became a fact that the losses in the place limit exceeded the available indemnity lands. It was after that fact existed that the plaintiff, Santa Fe Pacific Railroad Company, by quitclaim deed, in 1905, conveyed to the Aztec Land and Cattle Company, Ltd., its interest as acquired from the Atlantic and Pacific Railroad Company. At that time there was not sufficient land in the indemnity limit to satisfy the losses in the place limit. After this condition arose, the very purpose of selection had ceased to exist. No longer was there any excess in the indemnity land from which to make a selection. It was entitled not to a part of the indemnity lands unidentified, but to all of the lands then remaining in the indemnity area.

Had the Company filed its selection at any time after this condition arose (before the release in 1940) the only question for determination by the Secretary would have been—did the losses in place (and that is admitted here) exceed the indemnity lands? If so, the Company was entitled to patents, and the only discretion vested in the Secretary of the Interior would have been as to whether or not the conditions aforesaid existed.

From the record it is indisputable that the Atlantic and Pacific Railroad Company and the Santa Fe Pacific Railroad Company and the Aztec Land and Cattle Company, Ltd., at all times, and now do, consider the transactions between them to have been made in good faith. The Company received compensation for what it had and for what it had a right to have. When, under the Transportation Act, it made an assignment to the Government, it excluded from that assignment that which it felt it had in good faith sold and been paid for. Its reservation or exclusion from the release was within the provisions of Section 321(b) of the Transportation Act aforesaid.

In view of the foregoing, it is my belief that the Company had an interest in specific lands which it had a lawful right to convey, and having reserved such lands from the provisions of the release, the Secretary of the Interior could not lawfully refuse to issue patents to such lands for the reasons assigned by him.

Plaintiffs' motion for summary judgment is, therefore, sustained, and defendants' motion for summary judgment is overruled. Orders in accordance herewith will be presented.