# PAYNE, SECRETARY OF THE INTERIOR, ET AL. v. CENTRAL PACIFIC RAILWAY COMPANY

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 17.   Argued October 6, 1920.—Decided February 28, 1921.

1. A selection duly made and perfected by the proper railroad company, under the California-Oregon Railroad Company land grant act (July 25, 1866, c. 242, 14 Stat. 239), of indemnity lands open at the time to such selection, and in lieu of place land actually lost, is not to be likened to the initial step toward acquiring title under a public land law by future compliance, but rather to the concluding step by which, after full compliance, the right to the title is earned. P. 234.

2. The ultimate obligation of the Government in respect of the indemnity lands is on the same plane as that respecting the lands in place; the only difference is in the mode of identification, lands in place being identified by filing the map of definite location, indemnity lands by selections made in lieu of losses in the place limits. P. 236.

3. In providing that such selections shall be made under the direction of the Secretary of the Interior, the act merely subjects them to the general rule that the administrative execution of all public land laws is to be under his supervision and direction, but clothes him with no discretion to enlarge or curtail the rights of the grantee or to substitute his judgment for the will of Congress manifested in the act. P. 236.

4. The Act of June 25, 1910, c. 421, 36 Stat. 847, applies to "public lands," and does not authorize the withdrawal as a power site of lands duly selected under the California-Oregon Grant, supra. P. 237.

5. A suit by a railroad company against the Secretary of the Interior and the Commissioner of the General Land Office to enjoin them from canceling such an indemnity selection, held not a suit against the United States. P. 238.

6. The decree should require the defendants to dispose of the selection on its merits without reference to the power site withdrawal, rather than forbid cancelation of the selection. P. 238.

46 App. D. C. 374, affirmed, with a modification.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Nebeker,* with whom *Mr. H. L. Underwood,* Special Assistant to the Attorney General, was on the brief, for appellants:

Until approval by the Secretary of the Interior no rights as against the United States are acquired under an indemnity selection list. *Sioux City & St. Paul R. R. Co.* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 117 U. S. 406, 408; *Wisconsin Central R. R. Co.* v. *Price County,* 133 U. S. 496, 511, 512, 513; *United States* v. *Missouri, Kansas & Texas Ry. Co.,* 141 U. S. 358, 374, 375; *New Orleans Pacific Ry. Co.* v. *Parker,* 143 U. S. 42, 57, 58; *Osborn* v. *Froyseth,* 216 U. S. 571, 577; *Northern Pacific Ry. Co.* v. *McComas,* 250 U. S. 387, 391, 392; *Humbird* v. *Avery,* 195 U. S. 480, 507.

The word "selection" is commonly used to refer to an application to select, and from that arises a misapprehension as to what is meant in many of the adjudicated cases by the expression that title under such a filing vests upon selection. In such cases the word "selection" means approved selection. As was said in *Wisconsin Central R. R. Co.* v. *Price County, supra,* 514, "They [selections] are not considered as made until they have been approved, as provided by statute, by the Secretary of the Interior."

What is the effect then of the mere filing of an indemnity selection? Its only effect, we submit, is to give the selector a preference right to the land as against one tendering a filing thereafter, unless such latter filing is supported by a settlement or right initiated previously to the indemnity filing. *Weyerhaeuser* v. *Hoyt,* 219 U. S. 380, 387, 388, 391, 392.

But it is important to note that this principle pertains to the relative rights of individuals seeking to acquire title from the Government but it can not be invoked against the Government itself. This distinction differen-

tiates the instant case from *Weyerhaeuser* v. *Hoyt, supra,* and what is said in the opinion in that case as to the doctrine of relation and the scope of the inquiry of the Secretary of the Interior in passing upon the selection must be taken in connection with the question there under consideration, namely, the relative rights of conflicting claimants. It is also important to note that in the *Weyerhaeuser Case* the selection had been approved and therefore the doctrine of relation was clearly applicable. In the case at bar there has been no approval of the selection and therefore there is nothing upon which to base an application of the doctrine of relation.

That the filing of an indemnity selection does not create rights as against the United States is also shown by what is said in *Stalker* v. *Oregon Short Line R. R. Co.,* 225 U. S. 142. See also *Minneapolis, St. Paul &c. Ry. Co.* v. *Doughty,* 208 U. S. 251.

The well-established rule that a claimant to public land, who has done all that is required to perfect his claim, acquires rights against the Government, can have no application to this case; for no legal or equitable title vested as to the lands sought under the indemnity selection, because the same was never approved. It was, therefore, incumbent on' the Secretary to ascertain the status of the lands at the time when the indemnity filing was taken up by him for final action.

The withdrawal of the lands in controversy and their inclusion in a power-site reserve was authorized and valid and constituted a bar to the approval of the selection list. *United States* v. *Midwest Oil Co.,* 236 U. S. 459; Act of June 25, 1910, c. 421, 36 Stat. 847. Section 2 of this act particularly enumerates the kinds of claims or filings which are exempted from withdrawals.

Had Congress intended that other exceptions should be recognized, it would have so declared. See Administrative Ruling, 43 L. D. 293.

Furthermore, as only an inchoate right was initiated by the filing of the indemnity list, the withdrawal was superior to it and barred its consummation. Such a filing is not like homestead or other claims upon which final proofs have been submitted and the claimant has done all that is required of him under the law, thus vesting him with a title equivalent in equity to that obtained by patent. It bears a closer analogy to a claim based on the preëmption law. *Frisbie* v. *Whitney,* 9 Wall. 187; *Yosemite Valley Case,* 15 Wall. 77; *Shepley* v. *Cowan,* 91 U. S. 330, 338; *Russo-American Packing Co.* v. *United States,* 199 U. S. 570; *Wagstaff* v. *Collins,* 97 Fed. Rep. 3, 8; *Campbell* v. *Wade,* 132 U. S. 34, 38. The doctrine of relation was sought to be invoked in *United States* v. *Morrison,* 240 U. S. 192.

The decree of the Court of Appeals directing an order for the issuance of patent was erroneous, since the United States was not a party and the effect of that decree would be to deprive the United States of the title to its lands. The case falls within the rulings of this court in *Louisiana* v. *Garfield,* 211 U. S. 70, and *New Mexico* v. *Lane,* 243 U. S. 52.

*Mr. A. A. Hoehling* and *Mr. Frank Thunen,* with whom *Mr. C. F. R. Ogilby* was on the brief, for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from canceling a selection of indemnity lands under a railroad land grant. The trial court dismissed the bill and the Court of Appeals reversed that decree and directed that an injunction issue. 46 App. D. C. 374. An appeal under § 250, par. 6, of the Judicial Code brings the case here.

The allegations of the bill were admitted by a motion to dismiss, upon which the defendants announced their purpose to stand; and the case as thus made is as follows:

By the Act of July 25, 1866, c. 242, 14 Stat. 239, a grant of public lands in California and Oregon was made "for the purpose of aiding in the construction" of a line of railroad from a point in Sacramento Valley to Portland "and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores" over such line. The part of the grant in California was made to the California and Oregon Railroad Company, its successors and assigns, and the part in Oregon to another company. The grant was in present terms—"there be, and hereby is, granted"—and was of "every alternate section of public land, not mineral, designated by odd numbers" within designated limits on each side of the line. With this was coupled a provision that "when any of said alternate sections or parts of sections shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, other lands, designated as aforesaid, shall be selected by said companies in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections designated by odd numbers as aforesaid, nearest to and not more than ten miles beyond the limits of said first-named alternate sections." The line of the road was to be definitely located by filing a map with the Secretary of the Interior; and the work of construction was to be completed in sections of twenty miles within a time named, which was extended to July 1, 1880, by an amendment of June 25, 1868, c. 80, 15 Stat. 80. The completion of each section was to be ascertained and reported by commissioners appointed by the President, whereupon patents for the lands coterminous therewith were to be issued. The railroad was to be and remain "a public highway for the use of the government of the United States, free of all toll or other charges" for the transportation of

its property or troops. An assent to the act on the part of each grantee was to be filed within one year after its passage.

The California and Oregon Railroad Company duly assented to the act, definitely located its part of the line by filing the required map, and constructed, completed and equipped that part of the railroad within the extended time. The completion was duly reported by the commissioners and was recognized by the President. In addition, that company and its successors have complied with the act in all other respects. The Central Pacific Railway Company, the plaintiff, became the legal successor of that company in 1899 and holds its rights, title and interest under the grant. The part of the road in Oregon also was completed, but that is not of present concern.

In the process of adjusting the grant it has developed that many of the designated sections in the place limits were lost to the grant by reason of other disposals, homestead settlements and preëmption claims antedating the definite location of the line of the road, thereby making it necessary to resort to the indemnity limits to satisfy the grant. The present ascertained losses amount to thousands of acres and it is certain that further substantial losses will develop as the adjustment proceeds. As yet it is impossible to determine even approximately the total losses, because a material part of the grant is still unsurveyed; and this makes it uncertain whether all can be made good from the lands available for indemnity.

The lands in question were selected by means of an indemnity list filed in the local land office February 24, 1910, and the selection was in lieu of losses specified in the list which were actual and entitled the plaintiff to indemnity. The lands selected are in the indemnity limits and admittedly non-mineral, and at the time of selection were such as could be selected to supply the losses specified. The list was accompanied by the requisite sustaining proofs

and conformed in all respects to the regulations embodying the directions of the Secretary of the Interior upon the subject. The plaintiff paid the fees collectible thereon and the local land officers approved the list and promptly forwarded it and the accompanying proofs to the General Land Office with the usual certificates and endorsements. It remained pending in that office until January 16, 1915, when the Commissioner ordered its cancelation solely on the ground that in the meantime the selected lands had been included in a temporary executive withdrawal for a water-power site under the Act of June 25, 1910, c. 421, 36 Stat. 847. The plaintiff appealed to the Secretary of the Interior and he affirmed the Commissioner's action. A reconsideration was sought and denied, and the plaintiff then brought this suit.

It is not questioned that, had the selection been reached for consideration before the withdrawal, it would have been the duty of the Commissioner and the Secretary to approve it and pass the lands to patent; nor that, if the withdrawal be not an obstacle, it still is their duty to do so. But it is insisted that so long as the selection was without the Secretary's actual approval it gave no right as against the Government and that the withdrawal made while it was as yet unapproved became a legal obstacle to its approval. In this there is an obvious misconception of the office and effect of the selection, and the misconception is particularly shown in the brief for the appellants, where the selection is treated as only a preliminary land application or filing. Counsel there say: "What is the effect then of the mere filing of an indemnity selection? Its only effect, we submit, is to give the selector a preference right to the land as against one tendering a filing thereafter."

Rightly speaking, the selection is not to be likened to the initial step of one who wishes to obtain the title to public land by future compliance with the law, but rather

to the concluding step of one who by full compliance has
earned the right to receive the title.  Referring to a similar
grant and the relative obligations of the Government and
the grantee, it was said in *Burke* v. *Southern Pacific R. R.
Co.*, 234 U. S. 669, 679–680: "The act did not follow the
building of the road but preceded it.  Instead of giving a
gratuitous reward for something already done, the act
made a proposal to the company to the effect that if the lat-
ter would locate, construct and put into operation a desig-
nated line of railroad, patents would be issued to the com-
pany confirming in it the right and title to the public lands
falling within the descriptive terms of the grant.  The pur-
pose was to bring about the construction of the road, with
the resulting advantages to the Government and the pub-
lic, and to that end provision was made for compensating
the company, if it should do the work, by patenting to it
the lands indicated.  The company was at liberty to accept
or reject the proposal.  It accepted in the mode contem-
plated by the act, and thereby the parties were brought
into such contractual relations that the terms of the pro-
posal became obligatory on both.  *Menotti* v. *Dillon*, 167.
U. S. 703, 721.  And when, by constructing the road and
putting it in operation, the company performed its part of
the contract, it became entitled to performance by the
Government.  In other words, it earned the right to the
lands described."  And speaking specially of the right to
indemnity lands under such a grant, it was said in *United
States* v. *Southern Pacific R. R. Co.*, 223 U. S. 565, 570:
"What a railroad is to be indemnified for may be fixed as
of the moment of the grant, but what it may elect when
its right to indemnity is determined depends on the state of
the lands selected at the moment of choice.  Of course the
railroad is limited in choosing by the terms of the indem-
nity grant, but the so-called grant is rather to be described
as a power.  Ordinarily no color of title is gained until the
power is exercised.  When it is exercised in satisfaction of

a meritorious claim which the Government created upon valuable consideration and which it must be taken to have intended to satisfy (so far as it may be satisfied within the territorial limits laid down), it seems to us that lands within those limits should not be excluded simply because in a different event they would have been subject to a paramount claim."

The ultimate obligation of the Government in respect of the indemnity lands is on the same plane as that respecting the lands in place. The only difference is in the mode of identification. Those in place are identified by filing the map of definite location, and the indemnity lands by selections made in lieu of losses in the place limits. *St. Paul & Sioux City R. R. Co.* v. *Winona & St. Peter R. R. Co.*, 112 U. S. 720, 731–733; *Southern Pacific R. R. Co.* v. *Bell*, 183 U. S. 675, 687. The selections are to be made by the grantee, not by the Secretary of the Interior. True, the act provides that they shall be made under the Secretary's direction, but this merely applies to them the general rule, announced in Rev. Stats., §§ 441, 453, 2478, that the administrative execution of all public land laws is to be under his "supervision" and "direction." *Catholic Bishop of Nesqually* v. *Gibbon*, 158 U. S. 155, 166. Its purpose is to make sure that, in accord with that power of supervision and direction, he is to see to it that the right of selection is not abused, that claims arising out of prior settlement and the like are not disturbed, that no indemnity is given except for actual losses of the class intended, and that the lands selected are such as are subject to selection. But of course it does not clothe him with any discretion to enlarge or curtail the rights of the grantee, nor to substitute his judgment for the will of Congress as manifested in the granting act. *Cornelius* v. *Kessel*, 128 U. S. 456, 461; *Orchard* v. *Alexander*, 157 U. S. 372, 383; *Williams* v. *United States*, 138 U. S. 514, 524; *Daniels* v. *Wagner*, 237 U. S. 547, 557–561; *Northern Pacific Ry. Co.* v. *McComas*, ·

250 U. S. 387, 392–393. The cases cited as making for a
different conclusion respecting the Secretary's discretion
were examined and that view of them rejected in *Weyer-
haeuser* v. *Hoyt,* 219 U. S. 380, 387–388, and *Daniels* v. *Wag-
ner,* 237 U. S. 547, 557–561. In the *Weyerhaeuser Case* it
was held that the authority conferred on the Secretary re-
specting the selection of indemnity lands "involved not
only the power but implied the duty to determine the law-
fulness of the selections as of the time when the exertion of
the authority was invoked by the lawful filing of the list of
selections."

As before shown, this indemnity selection was made in
full compliance with the directions promulgated by the
Secretary, was of lands subject to selection, and was based
on actual losses in the place limits adequate to sustain
it. The railroad then had been constructed and equipped
as required by the granting act and nothing remained
to be done by the grantee or its successor to fulfil the con-
ditions of the grant and perfect the right to a patent. The
rule applicable in such a situation is that "a person who
complies with all the requisites necessary to entitle him to
a patent for a particular lot or tract is to be regarded as the
equitable owner thereof." *Wirth* v. *Branson,* 98 U. S. 118,
121; *Benson Mining Co.* v. *Alta Mining Co.,* 145 U. S.
428, 432. This rule has been applied and enforced where
the Secretary through an error of law declined to approve
and give effect to lawful selections and certified the lands
for the use of another claimant,—the court saying that
the Secretary could not thus deprive the selecting com-
pany of "rights which became vested by its selection of
those lands." *St. Paul & Sioux City R. R. Co.* v. *Winona
& St. Peter R. R. Co.,* 112 U. S. 720.

The act under which the subsequent power-site with-
drawal was made is confined to "public lands," a term
uniformly regarded as not including lands to which rights
have attached and become vested through full compliance

with an applicable land law. *Newhall* v. *Sanger*, 92 U. S. 761, 763; *Minnesota* v. *Hitchcock*, 185 U. S. 373, 391; *United States* v. *Hemmer*, 241 U. S. 379, 385–386. Besides, to apply the act to the lands in question, lawfully earned and selected as they were, would work such an interference with private rights as plainly to require that it be construed as not including them. *Wilcox* v. *Jackson*, 13 Pet. 498, 513; *Lytle* v. *Arkansas*, 9 How. 314, 333, 335; *Sinking-Fund Cases*, 99 U. S. 700, 718–719; *United States* v. *Jin Fuey Moy*, 241 U. S. 394, 400.

We are asked to say that this is a suit against the United States and therefore not maintainable without its consent, but we think the suit is one to restrain the appellants from canceling a valid indemnity selection through a mistaken conception of their authority and thereby casting a cloud on the plaintiff's title. *Ballinger* v. *Frost*, 216 U. S. 240; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 619–620; *Lane* v. *Watts*, 234 U. S. 525, 540.

Our conclusion is that in giving effect to the withdrawal as against the prior selection, which admittedly was valid when made, the appellants departed from a plain official duty, and that to avoid the resulting injury to the plaintiff, for which no other remedy is available, an injunction should issue directing a disposal of the selection on its merits unaffected by the withdrawal. Such an injunction, we think, is better suited to the occasion than that indicated by the Court of Appeals. In other respects the decree of that court is

*Affirmed.*