## FALL, Secretary of the Interior, v. STATE OF LOUISIANA.

(Court of Appeals of District of Columbia. Submitted December 12, 1922. Decided March 5, 1923.)

### No. 3810.

1. **Public lands ⬤⟿58—Grant of swamp land to state held made by earlier special act.**

    Act March 2, 1849, granting to Louisiana swamp and overflowed lands unfit for cultivation, and providing that, on approval of the survey showing which are swamp and overflowed lands, the fee simple thereto shall vest in the state, was not repealed by Act Sept. 28, 1850 (Comp. St. §§ 4958–4960), granting swamp and overflowed lands to the states in which they were situated, and directing a patent to be issued therefor at the request of the Governor, so that the title to the swamp lands in Louisiana vested in that state on the approval of the survey, though no patent was issued therefor.

2. **Mines and minerals ⬤⟿2—Reservation by department of mineral lands already granted by Congress is ineffective.**

    Where the title to swamp lands granted to the state by Act March 2, 1849, had become vested in fee on the approval of the survey of such lands, the fact that in the departmental orders an exception was made reserving mineral lands in no way affects the title of the state, unless the lands granted were subject to the mineral exemptions from time to time fixed by Congress.

3. **Mines and minerals ⬤⟿2—Mineral lands held not reserved from grant of swamp lands.**

    The swamp lands granted to Louisiana by Act March 2, 1849, which contained no reservation of mineral lands, and which was made prior to the establishment by Congress of the policy of reserving the minerals generally in the grants of lands known to be mineral in character, is not affected by the subsequent discovery of minerals within the lands so granted.

4. **Mines and minerals ⬤⟿2—Lands not known to be mineral at time of grant are not reserved.**

    Lands which were not known to be mineral in character at the time they were granted to the state are not reserved from the grant.

5. **Public lands ⬤⟿58—Validity of grant relates back to time it was made.**

    The validity of the grant or selection of public lands relates back to the time when it was made.

6. **Public lands ⬤⟿109—United States not indispensable party to suit affecting lands, after deed passes to state.**

    United States is not indispensable party to suit by state for mandatory injunction requiring Secretary of the Interior to vacate a decision relating to public lands, where the fee title to the lands had previously passed to the state.

Appeal from the Supreme Court of the District of Columbia.

Suit by the State of Louisiana against Albert B. Fall, Secretary of the Interior, for a mandatory injunction. Decree for plaintiff, and defendant appeals. Affirmed.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. E. Wright and E. S. Booth, both of Washington, D. C., for appellant.

F. W. Clements, of Washington, D. C., for the State of Louisiana.

Before VAN ORSDEL, Associate Justice, and MARTIN and SMITH, Judges of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. The Secretary of the Interior of the United States appeals from a decree of the Supreme Court of the District of Columbia, directing that a mandatory injunction issue requiring him to vacate a decision withholding title from the state of Louisiana to certain swamp and overflowed lands, because of their alleged mineral character, and restraining the Secretary from disposing of the lands, or taking any action affecting the same, excepting such action as may be necessary to the final recognition of the rights of the state to title therein.

It appears that under the Act of March 2, 1849, 9 Stat. 352, Congress enacted:

"That to aid the state of Louisiana in constructing the necessary levees and drains to reclaim the swamp and overflowed lands therein, the whole of those swamp and overflowed lands, which may be or are found unfit for cultivation, shall be, and the same are hereby, granted to the state."

The act further provided:

"That as soon as the Secretary of the Treasury [afterwards Secretary of the Interior] shall be advised, by the Governor of Louisiana, that that state has made the necessary preparation to defray the expenses thereof, he shall cause a personal examination to be made, under the direction of the surveyor general thereof, by experienced and faithful deputies, of all the swamp lands therein which are subject to overflow and unfit for cultivation; and a list of the same to be made out, and certified by the deputies and surveyor general, to the Secretary of the Treasury, [Interior] who shall approve the same, so far as they are not claimed or held by individuals; and on that approval, the fee simple to said lands shall vest in the said State of Louisiana, subject to the disposal of the Legislature thereof."

By Act of September 28, 1850, 9 Stat. 519 (Comp. St. §§ 4958–4960), Congress made a similar grant to the state of Arkansas of the swamp and overflowed lands therein, providing that the Secretary should "make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the Governor of the state of Arkansas, and, at the request of said Governor, cause a patent to be issued to the state therefor." Section 2 (Comp. St. § 4959). By a further provision the act was extended to each of the states of the Union in which swamp and overflowed lands may be situated.

The lands in controversy were officially surveyed in 1871, and the Commissioner of the General Land Office and the Secretary of the Interior found, from the field notes of the survey, as follows:

"In conclusion: It is found from the field notes of the survey of 1871 that the lands hereinafter described are swamp or overflowed, and, if nonmineral in character, inure to the state under its grant."

This amounted to an approval by the Secretary that they were swamp and overflowed lands, within the provisions of the acts of 1849

and 1850, and would pass to the state, as therein provided, if non-mineral in character.

The Commissioner of the General Land Office, in a decision, under date of November 13, 1919, addressed to the register and receiver of the land office at Baton Rouge, La., not only found from the field notes of the survey of 1871 that the lands were swamp and overflowed, but instructed the register and receiver, that:

"The survey of 1871, having been duly made, approved, and accepted and being the latest and controlling survey of said T. 18 N., R. 14 W., will be followed in the future, as it has heretofore been in the past, in the adjudication of claims to public lands shown therein."

It therefore appears that the department has, at all times, recognized the finality of the approval of the survey of 1871, as settling the character of the lands as swamp and overflowed.

This brings us to the chief contention of the government, that the lands in question are subject to the mineral reservations generally affecting public lands. This is, of course, based upon the assumption that whatever rights Louisiana acquired were under the grant of 1850, and not of 1849, and that, since title under the later act could only pass by patent and, patent not having issued, the title is still in the government. To sustain this claim it is urged that the title acquired by the state, under the grant, was merely inchoate, and if the land is found to be valuable for mineral, before the perfection of title, it will not vest in the state.

[1] This suggests the proposition whether or not, under the terms of the grant to the state, the question of the mineral or nonmineral character of the lands can be invoked by the government. The acts of 1849 and 1850 are in terms of present grant. In other words, the grant by the government to the state of Louisiana was a grant in præsenti. If, therefore, the grant was made under the act of 1849, and not affected by the act of 1850, all that was necessary to confirm the title in the state of Louisiana was the survey of the lands and the approval of the Secretary of the Interior that they were swamp and overflowed in character.

In Louisiana v. Garfield, 211 U. S. 70, 29 Sup. Ct. 31, 53 L. Ed. 92, it was urged that the act of 1850 repealed the act of 1849, and that title accordingly would not pass on the mere approval by the Secretary, but by patent as provided in the act of 1850. The court, however, overruling this contention, said:

"It is argued that this [act of 1850] so far repealed the special act of 1849 that thereafter the title would not pass on simple approval as provided therein, but a patent was necessary. As we understand, the continuous construction of the department has been to the contrary, and a great number of titles to a very large amount of land would be disturbed if we should accede to this argument. We see no reason for overthrowing the long-continued understanding that the special provisions for Louisiana were not affected by a general clause, evidently intended to extend benefits to states that did not enjoy them at the time, not to change the mode of conveyance previously established in a case where the benefit already had been conferred. We may add that we assume that, if approval was sufficient to pass the title, the form of words used by the Secretary of the Interior on December 10, 1895, had that effect, notwithstanding the reference to the act of 1850, whatever may have been his understanding or intent."

The order of December 10, 1895, above referred to, was made with reference to the Ft. Sabine military reservation, under consideration in the Garfield Case, but admittedly coming within the grant of 1849. The order of the Secretary consisted of an indorsement upon a list of these lands that it was—

"Approved to the state of Louisiana under the Act of Congress of March 2, 1849, as supplemented and enlarged by the Act of Congress of September 28, 1850, subject to any valid adverse rights that may exist."

[2, 3] The lands here in question, having been granted to the state in 1849, subject to survey and approval by the Secretary, became vested in fee upon the approval of the survey of 1871. The mere fact that, in the respective departmental orders, an exception was made respecting the mineral character of the lands, in no way clouds, qualifies, limits, or affects the title of the state, unless the lands so granted were subject to the mineral exemptions from time to time fixed by Congress. No mineral reservation was made in the swamp land grant of 1849 to Louisiana. This grant was made prior to the establishment by Congress of the policy of reserving the minerals generally in the grants of lands known to be mineral in character. The grant, being in præsenti, could not be affected by subsequent legislation providing for the reservation of minerals. Nor was the land known to be mineral in character at the time of the grant. It is not clear, therefore, in just what way the subsequent discovery of minerals could affect the title of the state. No reservation of minerals was made in the grant; hence, if the lands had been known to be mineral at that time, the situation would not be different.

[4] That no intervening reservation of mineral rights by the government, in the lands granted to the state of Louisiana in 1849, and the approval of the survey as swamp and overflowed lands, can avail against the title of the state, is settled by the decision in Cooper v. Roberts, 18 How. 173, 15 L. Ed. 338. In that case, when the state of Michigan was admitted to the Union, it was granted, for the use of schools, section No. 16 of every township of the public lands within the state. It was held that this was a grant in præsenti, and when the lands were subsequently surveyed and marked out, the title thereto in fee simple attached and vested in the state, and that the Act of Congress of March 1, 1847, 9 Stat. 146, providing for the sale of lands containing "copper, lead, or other valuable ores," did not include the school land section there in controversy; nor could a lease of the minerals, made by the Secretary of War, confer any right upon the lessee to enter the land or obtain a patent therefor.

[5] It is settled law, not only in the established practice of the Land Department, but by the decisions of the courts, that the rights acquired under a grant of public lands, not known to be mineral at the time they are surveyed, or at the date of the grant, where the survey precedes it, regardless of the time when the matter becomes a subject of inquiry and decision, are not defeated or affected by a subsequent mineral discovery. United States v. Morrison, 240 U. S. 192, 36 Sup. Ct. 326, 60 L. Ed. 599; United States v. Sweet, 245 U. S. 563, 38 Sup. Ct. 193, 62 L. Ed. 473; Wyoming v. United States, 255

U. S. 489, 41 Sup. Ct. 393, 65 L. Ed. 742. Likewise the validity of the grant or selection relates back to the time when it was made. Payne v. New Mexico, 255 U. S. 367, 41 Sup. Ct. 333, 65 L. Ed. 680; Payne v. Central Pacific Railway Co., 255 U. S. 228, 41 Sup. Ct. 314, 65 L. Ed. 598.

[6] Objection to jurisdiction is interposed by the government on the ground that this suit cannot be maintained, because the United States is an indispensable party. This contention has its basis in the assumption that a patent has not issued to the state as required by the act of 1850, and therefore title has not passed from the United States. Inasmuch as we have held that patent is not essential to vesting the fee in the state, but that the fee passed with the approval of the survey of 1871, further consideration of this point is unnecessary.

The decree is affirmed, with costs.

Motion for rehearing overruled March 23, 1923. Mandate stayed until further order. Petition for appeal to United States Supreme Court granted April 7, 1923.