## THE EVELYN D.

### HAYLOCK v. DUNNING, Collector of Customs, et al.

(District Court, S. D. Georgia, Savannah Division. August 10, 1926.)

1. **United States** ⬅125—Suit to enjoin proceeding against liquor-laden vessel held not against the United States, but is maintainable against federal officers.

Under the facts, suit to enjoin institution of any proceedings against liquor-laden vessel seized on high seas *held* not suit against United

14 F.(2d)—21

States, and may be maintained against the United States collector of customs and United States attorney in charge of such matters

2. **Injunction** ⬅28—Absence of evidence that liquor-laden vessel seized on high seas was unlawfully engaged held to warrant injunction against institution of any proceedings against it, or its cargo, master, or crew.

Absence of evidence that liquor-laden vessel, seized on high seas and held for investigation, was engaged in conspiracy to bring liquor into United States, or had entered a collection district, within Tariff Act, or was engaged in continuous transportation of liquor into United States by aid of smaller boats, *held* to warrant injunction against institution of any proceedings against such vessel, its cargo, master, or crew.

In Equity. Suit for injunction by Ernest Haylock, as master of the schooner Evelyn D., against M. O. Dunning, United States Collector of Customs for the port of Savannah, Ga., and another. Decree for complainant.

Connerat & Hunter, of Savannah, Ga., for complainant.

Chas. L. Redding, Asst. U. S. Dist. Atty., of Savannah, Ga., for respondents.

BARRETT, District Judge. Ernest Haylock, as complainant, brought his bill against the aforesaid respondents, averring that he was master of the schooner Evelyn D., and as such the lawful bailee and agent of the owner of said schooner, charged with the authority and duty of safeguarding and protecting his vessel and cargo; that he and the mate of the schooner are citizens of the republic of Honduras, two of the crew are Cubans, and three are Spaniards; that M. O. Dunning is United States collector of customs for the port of Savannah, resident in Savannah, and Charles L. Redding is assistant United States attorney for the Southern district of Georgia, actively in charge of the prosecutions that may be instituted by the United States in the Savannah division of the Southern district of Georgia; that James Miller, a British subject, resident of the island of Grand Caiman, is the owner of the schooner, which schooner has a provisional registry under the republic of Honduras, with a cargo manifested for St. Pierre-Miquelon; that while on voyage on the 12th day of May, 1926, at a point more than 35½ miles from the nearest land or point of the United States, said schooner, cargo, and crew were seized by the United States Coast Guard cutter Yamacraw, and over the protest of complainant brought into the port of Savannah,

and there kept for 46 days under guard; that the schooner is worth at least $12,000, and the cargo is of great value; that there has been great expense in the detention, and such expense will continue; that the only reason alleged for the seizure and detention of such schooner, cargo, and crew was that it is for the purpose of investigation; that neither your complainant, nor the said schooner, nor crew were guilty in any way of any crime against the United States, and were on the high seas at the time of the seizure, and there was no probable cause for such seizure; that complainant was advised by said assistant United States attorney that appeal to this honorable court for relief and protection of said schooner, cargo, and crew against a further large loss would be useless, inasmuch as a libel for condemnation would then be filed to prevent a hearing on the said rule, and delay the liberation of said schooner for some months; that said seizure and subsequent detention amount to a deprivation of personal liberty and private property without due process of law, or any process of law, or justification or sufficient probable cause therefor; that your complainant has been advised that he cannot secure the release of the said schooner and cargo by giving bond and other security; and that there is no adequate remedy at law. The prayer is, briefly stated, that the respondents be enjoined from interfering with the said schooner, cargo, master, or crew, or from instituting proceedings of any kind against the same.

The answer of respondents averred that there had been no "seizure" of said vessel, though it is admitted that the Yamacraw brought the schooner, cargo, and crew into the port of Savannah; that it is the right of the United States to have held the said vessel, cargo, and crew for the purpose of investigation; that the master of said vessel, complainant, was specifically advised that said vessel was formerly named the Nina Sande, and had been engaged in the business of rum runner for the past several years; that at the time the said schooner was boarded "she was engaged in a conspiracy with unknown bootleggers resident in the United States to illegally import intoxicating liquors into the United States through the state of Florida"; that there is probable cause of the said vessel and crew violating the laws of the United States to authorize their detention, and "respondent avers that upon information and belief said schooner Evelyn D. has been engaged in the business of illegally importing intoxi-cating liquors into the country for a number of years; he believes that she is the property of American bootleggers operating in the state of Florida; that she has brought thousands of cases of intoxicating liquors into the United States, by conspiring with citizens and residents of the United States to take intoxicating liquors from said vessel while anchored on the high seas and import them into the United States"; "that the conduct of said vessel has been mere subterfuge; that, as a matter of fact, at the time she was boarded she was engaged in the act of making a continuous trip or voyage from foreign shores to the United States, by transshipping her cargo of liquors on the high seas to smaller vessels, which would in turn smuggle intoxicating liquors into the country, all of which was prearranged and understood"; and that said vessel had no legal registry.

The facts alleged in the original bill were proved substantially, except as herein indicated. The master of the schooner, complainant herein, testified as follows: The Evelyn D. was formerly the Nina Sande, and was known to witness to have been a well-known liquor boat, and he would not have gone out on her, had her name not been changed. The Evelyn D. held a provisional Hondurian registry granted in Cuba, under which registry she should have immediately proceeded to Honduras to have carried this registration through; but she did not go to Honduras for such purpose, and did not plan to go. He had told the assistant United States attorney at Savannah that he thought the Evelyn D. belonged to Allen W. Johnson, and explained that his statement now made that the vessel belonged to James Miller was because, since coming to Savanah, he had seen a bill of sale to Miller. The bill of sale was not introduced, and Miller had never told witness that the vessel belonged to him, though he had talked to Miller. (There was no evidence as to who Johnson was.) He did not know to whom the cargo of liquor belonged. All he knew about it was that Minor Gwynne, a liquor dealer, had had same placed on board the vessel and told him to cruise along the coast of Florida about 40 miles from the shore, and a vessel would come out from Florida, deliver to witness a bill of lading, and the liquor should be delivered to such outcoming vessel. If the bill of lading did not cover the entire cargo, he was to sell the balance to such persons as might wish to purchase. The witness stated that he had no intention of going to

St. Pierre-Miquelon, which destination was indicated by the manifest, and that his orders were to deliver the liquor off the coast of Florida. The previous activities of the vessel, when known as the Nina Sande, were before the date of the alleged bill of sale to Miller, and the Nina Sande had been once seized by the United States government, taken into Tampa, and subsequently released.

(There was no testimony offered as to who was Minor Gwynne, his citizenship, his activities in this country, if any, by whom the bill of lading was to be issued, or where, or as to the previous activities of the Nina Sande, except her reputation as a liquor boat, and none as to any conspiracy to bring liquor into this country, other than as above stated.)

[1] 1. Under the averments of the bill, the respondents are proper defendants, and are subject to be enjoined. This is not a suit against the United States. Philadelphia Co. v. Stimson, Secretary of War, 223 U. S. 605, 32 S. Ct. 340, 56 L. Ed. 570; Payne v. Central Pac. R. Co., 255 U. S. 228 (5), 238, 41 S. Ct. 314, 65 L. Ed. 598; Colorado v. Toll, 268 U. S. 228 (1), 45 S. Ct. 505, 69 L. Ed. 927.

[2] 2. The suspicions in this case are comprehensive, and probably well founded; the evidence is uncontradicted, simple, and within narrow limits. The latter must control. The Evelyn D. was on the high seas when taken in charge by the revenue cutter Yamacraw. There is no evidence proving the charge that she was engaged in a continuous transportation of intoxicating liquor into this country by the aid of smaller boats. It may well be suspected that such was the intention of the schooner's master, but "there can be no violation until there is an attempted entry or introduction of merchandise into this country." U. S. v. 2180 Cases of Champagne, 9 F. (2d) 710 (C. C. A. 2d Cir.). Neither vessel nor cargo can be forfeited for violation of the existing Tariff Act (42 Stat. 858), when they had not been shown to have been within any collection district, and when not shown to have made any sales of liquor to persons intending to introduce it into commerce of the United States. The Sagatind, 11 F. (2d) 673 (C. C. A. 2d). So far as is disclosed, the sale, if made, might have been completed on the high seas. That is no crime against the United States. The Over the Top (D. C.) 5 F. (2d) 838.

There is no evidence to support the charge of conspiracy. If there were, and

if any overt act had been committed in the United States in pursuance thereof, prosecution and condemnation might be successful. Latham v. United States (C. C. A.) 2 F. (2d) 208 (2); Wharton's Criminal Law (11th Ed.) §§ 323–330. There is no law under the existing proof which would authorize prosecution or libel by either of the respondents.

It is therefore ordered that both respondents are enjoined from instituting any proceedings against the Evelyn D., its cargo, its master, or crew.