Stewart L. **UDALL**, Secretary of the Interior, Appellant,

v.

The **OIL SHALE CORPORATION** et al., Appellees.

Stewart L. **UDALL**, Secretary of the Interior, Appellant,

v.

Joseph B. **UMPLEBY** et al., Appellees.

Stewart L. **UDALL**, Secretary of the Interior, Appellant,

v.

Barnette T. **NAPIER** et al., Appellees.

Stewart L. **UDALL**, Secretary of the Interior, Appellant,

v.

Penelope Chase **BROWN** et al., Appellees.

Nos. 9581–9584.

United States Court of Appeals
Tenth Circuit.

Feb. 4, 1969.

Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C. (Harold S. Harrison, Acting Asst. Atty. Gen., Lawrence M. Henry, U. S. Atty., Roger P. Marquis and Thos. L. McKevitt, Attys., Dept. of Justice, Washington, D. C., with him on the brief), for appellant.

Fowler Hamilton, New York City, for appellees, The Oil Shale Corp., and others, and Penelope Chase Brown, and others.

Fred M. Winner, Denver, Colo., for appellees, Joseph B. Umpleby, and others.

Karl Ranous, Denver, Colo., for appellees, Barnette T. Napier, and others (Tweedy, Mosley & Young, Denver, Colo., and Cleary, Gottlieb, Steen & Hamilton, New York City, with them on the brief).

Before PHILLIPS, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

These are appeals in four consolidated cases wherein the United States District Court for the District of Colorado entered judgments for the plaintiffs. These plaintiffs were asserting that the

Secretary of the Interior had no authority to deny applications for patents for oil shale mining claims on the ground that assessment work had not been done, or on the ground that the claims had previously been cancelled by the Department for the same reason. The Secretary in Union Oil Company of California, 71 I.D. 169, and 72 I.D. 313, had taken the position that he could deny such applications under his construction of the opinions of the Supreme Court in two cases involving departmental cancellation of claims for failure to do assessment work. The issue on this appeal is whether the trial court was correct in holding that these two previous decisions were binding in the present case, and that they had held that the departmental adverse proceedings and the cancellation orders there litigated were void as were all others entered on the same ground.

In three of the cases the plaintiffs sought relief by mandamus, and in the fourth case a declaratory judgment was sought.

There follows a brief summary of the history of the four groups of claims in the consolidated cases:

*The Oil Shale Corporation Claims (Case No. 9581):*

These claims were located in December 1919 and January 1920. Contest proceedings were started against these claims by the Land Office in 1927 as Nos. 11,757, 11,759, and 11,761, for failure to do assessment work. In 1928 the Commissioner entered a decision that the claims were void. The decision was entered upon the failure of the contestees to appear and to answer the departmental assertion that assessment work was not done for the years 1921–1927. All the claimants of this group of claims have not made application for patents and were not parties in Union Oil Company of California, 71 I.D. 169.

*Umpleby Claims (Case No. 9582):*

These oil shale claims were located in 1918, were contested by the Land Office in No. 12,029 in 1929, and declared to be invalid and cancelled for failure to perform annual assessment work. Recently the claimants made application for patents which were rejected by the Secretary in Union Oil Company of California, supra.

*Napier Claims (Case No. 9583):*

These claims were located in 1918, were contested by the Land Office in No. 12,972 in 1931, and declared to be invalid and cancelled for failure to do assessment work. Patent applications for these claims were rejected by the Secretary in Union Oil Company of California, supra.

*Brown Claims or Oyler Claims (Case No. 9584):*

These claims were located in 1916, and in 1929 contested by the Land Office in No. 12,039, and declared invalid and cancelled for failure to do assessment work. Patent applications were rejected by the Secretary in Union Oil Company of California, supra.

When these placer claims were located the federal mining laws provided that upon a discovery of valuable mineral deposits upon the public domain, a mining claim could be established simply by marking the location so that its boundaries could be easily followed. The mining districts and the states added some additional requirements, but it was not necessary to secure the consent of any federal officials nor to even advise them of the location. Thus the discoverer could himself take steps immediately to protect his find. This was, of course, a practical and effective method for the prospector and miner, and it served to develop the mineral resources as was intended by Congress.

The markings at the location and state required notices served to advise other miners of the claim when they would go on the same ground. After the location was made it was required that the claimant perform a certain amount of work each year to demonstrate that he was holding it in good faith and to further advise others inter-

ested in the same ground that the claim was being asserted. Chambers v. Harrington, 111 U.S. 350, 4 S.Ct. 428, 28 L. Ed. 452. This assessment work was a requirement in virtually all of the mining districts by rule before the first federal statute on the subject was enacted. O'Reilly v. Campbell, 116 U.S. 418, 6 S. Ct. 421, 29 L.Ed. 669. Under the rules and the statute, if the work was not performed as and when required, the ground was then open to location by another person as if no prior claim had been staked. However, if no stranger so relocated the ground, the initial claimant could, after any failure to perform the work, resume assessment work and thereby the claim would not be subject to location by others. Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735. The assessment work year has been changed by Congress from time to time, and it has also provided moratoria for assessment work.

The basic federal requirements, the staking, and the assessment work were all acts relating to the ground itself and to create some condition which could be observed by persons seeking to locate claims in the same area. It was an inter-miner-prospector matter, and the federal government was not initially involved. The claims could, of course, be held indefinitely against others, and the Government, and be mined without doing more than making a valid location and performing the required assessment work. Upon the valid location, a possessory title passed from the United States to the locator which was a property right universally recognized. A patent could thereafter be sought by making application to the Land Office, but this was not a required step. The states in various ways supplemented the methods of marking and added a variety of notice, recording or filing requirements.

As to the assessment work aspect of claims made at the times these in question were made, it is apparent that the issue as to whether the work had been performed was a matter between rival claimants. It was precipitated by an ov-erstaking and the resultant dispute as to whether the ground was then open for location. The issue was decided by the courts between the individuals concerned. 17 Stat. 93; see the older Departmental Regulations, 37 L.D. 757 (1909). Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659. The current Regulations also expressly so provide. 43 C.F.R. § 3420.4.

It is important to consider the claims in question and the assessment work problems in this context of practice, district rules, and statutes alluded to above. The Federal Mining Leasing Act of 1920 (30 U.S.C. § 193, 41 Stat. 451) removed a few minerals including oil shale from the traditional method of location, and it must also be examined in this setting. As to those minerals not included in the Act, the traditional method generally prevails today. See Brennan v. Udall, 379 F.2d 803 (10th Cir.).

When the Mineral Leasing Act became effective, no new mining locations could be made for oil shale as there was substituted a leasing method. Thus those locators who already had made valid locations before the Act were not thereafter faced with the possibility of other locators overstaking their claims for oil shale if assessment work was not performed. Thus the assessment work requirement on pre-Mineral Leasing Act oil shale claims could not be "enforced" or tested by the acts of a second oil shale locator versus a prior locator. The pre-Act claims were thus placed in a unique position.

The General Land Office soon after the passage of the Mineral Leasing Act undertook an ambitious program to eliminate the pre-Mineral Leasing Act oil shale claims upon which assessment work had not been done. This program included the claims here in issue, and they were all cancelled by departmental action following contest proceedings directed against them for a failure to do assessment work. The program led to litigation to test the authority of the Department to cancel claims for such a reason. This culminated in Wilbur v.

United States ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445, decided by the Supreme Court in 1930, and in Ickes v. Virginia-Colorado Development Corp., 295 U.S. 639, 55 S.Ct. 888, 79 L. Ed. 1627 in 1935. The claims in issue were cancelled before the decision in Virginia-Colorado.

It would not seem necessary to analyze at any length the two cases—Krushnic and Virginia-Colorado. They are treated by the trial court in its opinion at 261 F.Supp. 954, at 966, and in the literature on the subject of assessment work. 2 American Law of Mining, Title VII, § 7.1. It is sufficient to say that these cases held that the doctrine outlined above relative to assessment work and who could challenge locations for failure to do such work was not changed by the Mineral Leasing Act. The Court clearly held that the Department (Secretary) had no power or authority to cancel claims solely on the ground that the assessment work had not been done.

At the time of the Supreme Court decisions cited above, the administrative cancellation proceedings in the Land Office had, of course, progressed to various stages in different proceedings. Thus some proceedings had concluded and orders had been entered cancelling the claims, while in others the proceedings were still in progress. But, as indicated above, cancellation orders had been entered in the contest proceedings directed against the claims here in issue. In 1935, following the Virginia-Colorado opinion, the Secretary in his decision, The Shale Oil Company, at 55 I.D. 287, stated that the adverse proceedings and the decision of the Commissioner cancelling certain oil shale claims in the case before him for failure to perform assessment work were void. The decision for the Secretary said of the Virginia-Colorado case:

"In view of this opinion of the court, the adverse proceedings and decision of the Commissioner therein in the instant case must be held as without authority of law and void. The above-mentioned decision of the De-partment in the *Virginia-Colorado Development Corporation* case and the instructions of June 17, 1930, are hereby recalled and vacated. The above-mentioned decisions in the cases of *Francis D. Weaver* and *Federal Oil Shale Company* and other Departmental decisions in conflict with this decision are hereby overruled. The Commissioner's decision is reversed and the record in the case remanded with instructions to reinstate the application and entry *in toto* and dispose of the same unaffected by the default in the performance of assessment labor, and if all else is found regular, to clearlist the application for patent."

The Department for many years thereafter, as demonstrated by the record in these cases, adopted a policy that its prior cancellations and proceedings taken to cancel oil shale claims for failure to perform assessment work were invalid or were void. The expression of this policy continued until about the time of the decision in Union Oil of California, 71 I.D. 169, and 73 I.D. 313, which gave rise to this litigation.

It is well at this point to refer to the somewhat older (1920) case of Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410. There the Supreme Court upheld the right of the Land Office to challenge mining claims on the ground that a discovery had in fact not been made. The fact of discovery was and is the basic statutory fact required to support any mining claim. It has been referred to as the source of title and what segregates the claimed ground from the public domain. It must have taken place before any title passes from the Government to the claimant. The Court held in Cameron that the Land Office could challenge the mining claims there concerned as to this fact of discovery, but this was the extent of the decision. The claims there sought to be established were so located as to cover the Bright Angel Trail leading into the Grand Canyon. The issue was discovery and not assessment work. Also in Best v. Humboldt Mining Co., 371 U.S. 334, 83 S.Ct.

379, 9 L.Ed.2d 350, the Court had before it in general terms a case similar to Cameron, supra, and expressed no new concepts in the authority of the Secretary. See also United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L. Ed.2d 170.

The Government on this appeal would present the issue very broadly, as being the authority of the Secretary of the Interior as to entries and locations on the public land. If the question is so broadly stated there can be found any number of decisions where reference is made to the wide extent of his duties as to the public domain. See Boesche v. Udall, 373 U.S. 472, 83 S.Ct. 1373, 10 L.Ed.2d 491. However the issue cannot here be put in such broad terms. Instead the issue must be limited to the effect of the Krushnic and Virginia-Colorado cases upon the prior departmental cancellations of claims for failure to do assessment work. There are some variations on this question and some related problems, but it is the basic issue.

It must be recognized that the departmental decision in Union Oil Company of California, supra, represents a reversal of the expressed policy of the Department which had prevailed since the Virginia-Colorado decision and The Shale Oil Company case, 55 I.D. 287, both in 1935. The record shows that this policy was expressed in correspondence, public statements, annual reports, and in official action. This official action includes the patenting of a substantial number of oil shale claims during this interval which had been previously cancelled by the Department for failure to do assessment work. This reversal of policy also represents a determination by the Secretary to have the Krushnic and Virginia-Colorado cases revisited. The Government in its brief states that the subject matter of this litigation is the same that was before the Secretary thirty-five years ago in proceedings leading to the Krushnic and Virginia-Colorado cases.

It is apparent that the private "enforcement" of the assessment work requirement through the overstaking by others of the ground covered by prior claims on which the work had not been done was completely thwarted by the intervention of the Mineral Leasing Act as to competing locations for oil shale. The old claims were thus sheltered by the Act. However the ground could have been relocated by others for non-Mineral Leasing Act minerals had they been discovered (ignoring withdrawal problems). With the removal of relocation as the method to make the non-worked locations available, the Department undertook its campaign to cancel which was halted by the Krushnic and Virginia-Colorado cases, and has here again resumed its efforts. The Secretary in the Virginia-Colorado case argued the effect of the Act described above. The Government in its reply brief in the appeal before us states that the decision in Virginia-Colorado is "wrong" but suggests that since we are bound by it, "it should be confined to its exact facts * * *."

We find no change in the authority of the Secretary since the Supreme Court decisions referred to above. There has been some relatively minor statutory change but it does not affect this issue. The Supreme Court held in Virginia-Colorado that the Secretary was acting outside his statutory authority when he cancelled the claims for the reason he did. The Court said: "We think that the Department's challenge, its adverse proceedings, and the decision set forth in the bill went beyond the authority conferred by law." It was a clear and direct holding, and it followed the Krushnic decision and, of equal importance, it followed Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410. The decision must be taken by us to hold that the Secretary was without power or authority under the laws to bring the adverse proceedings on the ground it did, and to so cancel the claims. This in the administrative area must be taken to mean his actions were void and of no legal effect. They were beyond his authority conferred by law, and this is the

sole source of his power. Pan American Petroleum Corp. v. Pierson, 284 F.2d 649 (10th Cir.). The Secretary so understood as indicated in the departmental decision in The Shale Oil Co., 55 I.D. 287, and by his later patenting of other cancelled claims. If his acts are so treated, the cancellations of the claims here concerned were of no effect and they stand as if no departmental action to cancel had been taken. Gabbs Exploration Co. v. Udall, 114 U.S.App.D.C. 291, 315 F.2d 37, may have arrived at a somewhat different conclusion, but it relied upon an abandonment assertion. It does not make much difference how this absence of administrative power is characterized, whether it is called lack of jurisdiction as the term is used with reference to the courts, or whether it is a lack of statutory power or authority, or lack of a duty covering the particular action attempted.

In West v. Standard Oil Co., 278 U.S. 200, 49 S.Ct. 138, 73 L.Ed. 265, the Court had before it an action against the Secretary of the Interior to enjoin proceedings in a local land office ordered by him to determine whether certain lands were known to be mineral at a certain time, and thus to attempt to determine whether title passed to the state under the Act of March 3, 1853. The Court found that the Secretary had no "affirmative duty" to the state or to a claimant. The Court said that Congress did give the Secretary the "power" to pass generally on the right of the state to the land. The Court said:

> "The broad power of control and supervision conferred upon the Secretary 'does not clothe him with any discretion to enlarge or curtail the rights of the grantee, nor to substitute his judgment for the will of Congress as manifested in the granting act.' Payne v. Central Pacific Railway Co., 255 U.S. 228, 236, 41 S.Ct. 314, 65 L. Ed. 598."

The Court concluded that the prior Secretary had acted without authority, and in substance that his order was of no ef-

fect. The Court placed the determination of power on the finding of a "duty." Under the circumstances before us the Court had also found no duty within the statutes. It is reasonable to conclude from the West opinion that the action of the Secretary there was void as it was here.

Thus we must hold, as did the trial court, that under the prevailing decisional and statutory law, the initial administrative proceedings as such and also the cancellation of the claims here in issue were of no effect. The Supreme Court decisions were handed down some thirty years ago and Congress has not extended the power of the Secretary as to this particular matter as well it could because it has been seriously concerned with oil shale development. In any event, if it was then deficient the acts then taken were void. As to whether the Secretary can now refuse to patent by reason of gaps in annual assessment work we feel bound by the Supreme Court's decisions and by the absence of Congressional action. The Secretary must follow those decisions on this point.

■ The Government here argues in effect that the Secretary has all the powers mentioned in the Constitution relating to public lands, but this cannot be. These powers are not in the Secretary, but are vested in Congress and he has what the statutes provide that he have and no more.

It must be borne in mind that these proceedings, derived as they are in part from the Union Oil of California case, are concerned only with the annual assessment work problem, and not with the many other hurdles which must be crossed by a claimant on the way to patent.

The Supreme Court cases removed the issue with which we are here concerned from the administrative arena and decided, and said expressly, that the basic power and authority of the Secretary was lacking as to his cancellations; and equally important was lacking as to his

challenge to the claims and his adverse proceedings for the purpose sought. When such fundamental propositions were decided it made no difference to what extent the administrative action in the decided case had progressed or in any other like contest already disposed of. It further could make no difference whether the claimants took any further administrative action or not because what had gone before was void. The Secretary would here place the parties back in the various stages of the administrative proceedings where they were when the Department was stopped by the Virginia-Colorado case, and then start the machinery again and apply the doctrines of exhaustion of administrative remedies, etc. But, as stated above, the Supreme Court did more than interrupt the proceedings; it completely invalidated them as if no contests had commenced.

The Department proceeded initially on the proper course following the decisions as is shown in the record on this appeal. In many subsequent proceedings concerning other claims cancelled as these before us were, it ignored its prior administrative action; and it received applications to patent such claims, and patents were issued.

The land status in the area concerned has become somewhat complicated in that surface entries were received and processed; the Taylor Grazing Act has been administered in the same area as these and other claims of similar status; oil and gas leases have issued, and other entries have been processed by the Department. The Secretary advances this problem as an argument to support its refusal to patent, but these complications are not essentially different than in any area where there are a considerable number of unpatented mining claims. This is one of the Secretary's basic problems in administering lands where the general mining laws are applicable, and all the data as to the locations and claims may not be in the records of the Land Office. This involved land status is not the doing of the mining claimants,

as the Department has proceeded to receive these other entries and to process them regardless of the unpatented claims. It is not a question of laches on either side. Time and the pressure for land utilization have complicated the land use on the one hand and have added administrative problems on the other. The Secretary is certainly equal to solving these problems as they are everywhere present.

These cases on appeal are like a voice out of the past with mining locations dating from 1918, with the clearly established legal propositions directly applicable to them and the matter thought to be at rest, but here we are some thirty or thirty-five years later and having progressed, or at least moved, somewhat out of the pick and shovel era faced with the same issues as to the same claims. It is, as stated above, the Virginia-Colorado issues and era revisited.

The appellees urge that we consider a contention presented to the trial court that the Department cannot retroactively change a "rule." However it appears that the problem is a more fundamental one than rule making, and is instead a reluctance by the Secretary to continue to follow the Supreme Court's decisions as his predecessors have before, and to seek a new interpretation or to ultimately have the Court modify them. This issue we have considered above and we need not treat this as a separate matter.

The Government urges that the same issues are present in all four cases. The relief sought is basically in the nature of mandamus and directed to the Secretary's action in the Union Oil case. 28 U.S.C. § 1361 gives the District Court jurisdiction in these proceedings. The Act of 1962 subjected the officers and employees of the Government to such actions in all the United States District Courts. The nature of these actions was defined by this court in Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364 (10th Cir.). See also Smith v. United States, 333 F.2d 70 (10th Cir.); Motah v. United States, 402 F.2d 1 (10th Cir.); Pan

American Petroleum Corp. v. Pierson, 284 F.2d 649 (10th Cir.); Couch v. Udall, December 4, 1968, 404 F.2d 97 (10th Cir.). As the legislative history indicates the intent was only to broaden the venue provisions of the prior Act. U.S.Code Cong. & Ad.News 1962, 87th Cong., 2d Sess., page 2785.

For the reasons indicated above we must hold that the Krushnic and Virginia-Colorado decisions of the Supreme Court control. These decisions must also be taken to mean that the prior cancellations for failure to do assessment work were void and are still void. Thus the Secretary was again without authority to attempt to base his actions on the same ground.

Affirmed.