## SOUTHERN PACIFIC RAILROAD COMPANY *v.* FALL, SECRETARY OF THE INTERIOR, ET AL.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 60. Submitted October 21, 1921.—Decided January 3, 1922.

A regulation of the Secretary of the Interior, providing that, in the selection of indemnity lands under railroad land grants, a part only of a minor legal subdivision shall not be assigned as a base unless the rest of it be also assigned in the same selection list, *held* a reasonable administrative measure, and not an arbitrary abridgment or obstruction of the right of selection. P. 464.

49 App. D. C. 241; 263 Fed. 637, affirmed.

APPEAL from a decree of the court below affirming a decree of the Supreme Court of the District of Columbia, which dismissed the bill in a suit against the Secretary of the Interior and the Commissioner of the General Land Office for a mandatory injunction.

*Mr. C. F. R. Ogilby* for appellant.

*Mr. Solicitor General Beck, Mr. Assistant Attorney General Riter* and *Mr. H. L. Underwood* for appellees.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from going beyond what the plaintiff insists is the limit of their power and duty in dealing with a selection of indemnity land under the Act of July 27, 1866, c. 278, 14 Stat. 292, which made a land grant in aid of the construction of a railroad in California.

The grantee constructed and put in operation the greater part of the road—495.52 miles—and thereby earned the right to have the grant fulfilled as to that part.

As to the part not constructed—84 miles—the grant was forfeited. Act September 29, 1890, c. 1040, 26 Stat. 496. The plaintiff long since succeeded to the rights of the grantee, and so much of the grant as was not forfeited is still in process of administration.

The grant, §§ 3 and 18, included all the odd-numbered sections within prescribed place limits on either side of the road, save as some of the sections or parts of sections fell within excepting clauses in the grant; and in lieu of the lands excepted others were to be selected by the grantee, or its successor, " under the direction of the Secretary of the Interior," in odd-numbered sections within prescribed indemnity limits.

Among the excepted lands, usually called " losses " or " bases for indemnity," was section 15 in a particular township. That section contained 640 acres and each quarter quarter therein contained 40 acres. In presenting an extended list of indemnity selections the plaintiff sought to use 15 acres of one of these quarter quarters as the base for a particular selection without then using the remaining 25 acres; and that selection was rejected on the ground that under an existing regulation prescribed by the Secretary of the Interior it was not admissible to use a part of a minor legal subdivision as the base for a selection unless the remaining part was similarly used in the same list. Another base had been specified in the beginning, but on examination in the land office it was found to be a tract outside the place limits and the plaintiff then sought to use the present base in its stead.

In the courts below the plaintiff took the position that the regulation operated as an arbitrary curtailment of its right of selection and was not within the scope of the power and duty of the Secretary, or of the Commissioner, in administering the indemnity provisions of the grant; and on that ground the plaintiff sought a mandatory injunction requiring those officers to deal with the selection

regardless of the regulation.  Both courts held the plaintiff's position untenable and refused the injunction.  49 App. D. C. 241; 263 Fed. 637.

To determine the question presented it is necessary to have in mind the situation which prompted the adoption of the regulation and also to understand how it is applied in actual practice.

The public lands are surveyed and platted, as nearly as may be, into rectangular tracts known as sections, half sections, quarter sections, half-quarter sections, and quarter-quarter sections; and, where the lines of the survey are interrupted by lakes, public reservations, Spanish or Mexican grants, state or territorial lines, etc., the irregular tracts at the point of interruption are platted and known as fractional sections, etc., or as lots having particular numbers.  After the survey the land officers dispose of the lands only according to these legal subdivisions—that is, as sections, half sections, etc.—and regard the minor subdivisions—quarter-quarter sections and lots—as not subject to further division, save in exceptional instances where Congress has specially provided otherwise.  Under this practice a right to purchase or enter 40 acres may be exercised by taking a full quarter-quarter section, but not by taking a part only of each of two or more minor subdivisions.  And the same rule is applied to relinquishments and lieu selections; that is to say, a right to relinquish land to which title has been acquired and to take other land in its stead may not be exercised by exchanging less than a legal subdivision at a time.  In short, where Congress has not specially provided otherwise, the practice has been, and is, to conform all sales, entries and other transactions to the subdivisions established by the survey and to treat the minor subdivisions as indivisible for all administrative purposes.

While the existence and scope of this practice are shown in many decisions of the Secretary of the Interior, it suf-

fices here to refer to two.  In one it is said to be well settled in the land department " that, in the absence of a statute making special provision to the contrary, public lands can be disposed of only according to the legal subdivisions of the public survey," *Melder* v. *White,* 28 L. D. 412, 420; and in the other it is said to be " an established rule " of that department " that parts of minor legal subdivisions of surveyed public lands can not be entered, selected, relinquished, or surrendered, under the public land laws, except in entries of particular kinds." *Southern Pacific Ry. Co.,* 46 L. D. 279, 281.

In the exceptional instances in which Congress has directed otherwise the principle of the practice was not disturbed.  All that was done was to provide a special mode of segregating and identifying particular lands which were being subjected to special forms of disposal which could not well be adjusted to the lines of the usual survey. The most conspicuous example of this is found in the laws regulating the disposal of mineral lands.

The manner of keeping the land office records—which is according to a system of " tract books,"—and the mode of checking up and tracing the various land transactions, have long been adjusted to this practice; and in the judgment of the land officers adherence to it is of much importance.

The regulation in question adapts and applies this general practice to the selection of indemnity lands under railroad land grants by requiring (a) that the selections be accompanied by a specification, tract for tract, of the losses on which they are based, (b) that the selections be made by legal subdivisions, and (c) that in specifying the losses minor legal subdivisions be used in entireties and not in fragments.

The last part of the regulation is what is challenged here.  As applied and enforced by the land officers it is not directed against using parts of a minor subdivision as

bases for two or more selections where the entire subdivision is used in the same selection list, but only against using it in fragments to sustain distinct selections in different lists. To illustrate: Parts of a lost quarter quarter containing 40 acres may be specified as the bases for selecting two or more fractional subdivisions aggregating 40 acres where the selections are all included in a single list, but not otherwise. And conversely, the loss of two or more fractional subdivisions aggregating 40 acres may be made the base for selecting a quarter quarter of 40 acres where the selection is not made piecemeal in different lists. *Southern Pacific Ry. Co., supra.* It, however, is not required that the losses and selections be exactly matched in quantity, but only that they correspond " as nearly as legal subdivisions will permit." In other words, reasonable approximation is deemed sufficient and such minor differences as are practically unavoidable are disregarded. *Florida Central & Peninsular R. R. Co.,* 15 L. D. 529; *Bull* v. *Northern Pacific R. R. Co.,* 26 L. D. 693; *Northern Pacific Ry. Co.,* 43 L. D. 534; *Southern Pacific Ry. Co., supra.*

Thus understood, the regulation is merely an administrative measure designed to facilitate the examination and disposal of the selection lists and to be fair alike to the claimant and the Government. It neither abridges the right of selection nor unreasonably obstructs its exercise, but on the contrary leaves the claimant free to select and obtain indemnity for all losses, if only the lands available in the indemnity limits are sufficient for the purpose.

When the manifold losses to be indemnified under these extensive grants are considered, it is apparent that some regulation of the mode of selection is essential. This is recognized in the several granting acts, all of which in substance, or in express terms, as here, provide that the selections shall be made under the direction of the Secretary of the Interior. These provisions of course cannot

be taken as investing the Secretary with authority to abridge the right to indemnity or to interpose any unreasonable obstruction to its exercise, *Payne* v. *Central Pacific Ry. Co.*, 255 U. S. 228, 236; but in our opinion they do enable him, in the interest of an orderly and efficient administration, to prescribe and enforce reasonable regulations respecting the mode in which the selections shall be made and brought to the attention of the land officers.

The regulation in question is of that character. Its evident purpose, as also its material tendency, is to simplify the task of examining and passing on the selections when presented; to avoid repeated searches to ascertain the status of the same minor subdivision, such as would be essential if it were used in fragments as bases for distinct selections made at different times; to guard against the mistakes incident to such practice; and to conform the mode of selection to the usual procedure in public land transactions.

There is nothing in this granting act with which the regulation conflicts. The grant is of sections and parts of sections to be identified by the usual survey and is accompanied by a provision, § 6, for a full survey of all lands within its exterior limits. The lands excepted are to be identified in the same way as those passing under the grant, and so of the lands which may be taken as indemnity. Thus the survey is made an element of every part of the grant. Nowhere in the granting act is there any suggestion of an intention that the grant or any part of it shall be administered otherwise than by legal subdivisions.

For these reasons we hold that the regulation is within the scope of the power and duty of the Secretary of the Interior.

*Decree affirmed.*