**WORK, Secretary of the Interior, et al.    v.
CENTRAL PAC. RY. CO.**

(Court of Appeals of District of Columbia.
Submitted April 7, 1926.  Decided May 3, 1926.)

No. 4392.

Public lands ⊃78—Government cannot refuse patent to nonmineral portion of 40-acre tract selected by railroad under grant (Act July 1, 1862 [12 Stat. 489]; Act July 2, 1864 [13 Stat. 356]).

Nonmineral land grants to railroad under Act'July 1, 1862 (12 Stat. 489), Act July 2, 1864 (13 Stat. 356), and amendatory acts, are grants in præsenti, and, railroad having se-lected particular 40-acre tract, government cannot refuse to issue patent for portion of it, on ground that remaining portion has been found to contain mineral deposits.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Central Pacific Railway Company against Hubert Work, Secretary of the Interior, and another. From a decree for plaintiff, defendants appeal. Affirmed.

D. V. Hunter, of Washington, D. C., for appellants.

S. C. Peelle and C. F. R. Ogilby, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is by the Secretary of the Interior and the Commissioner of the General Land Office from a decree of the Supreme Court of the District of Columbia, enjoining them from canceling and rejecting plaintiff railway company's selection of the E.½ of the N. W. ¼ of the S. W. ¼ of section 5, township 33 N., range 41, E. M. D. M., in the state of Nevada, claimed by the plaintiff under Act July 1, 1862 (12 Stat. 489) Act July 2, 1864 (13 Stat. 356), and acts amendatory thereof.

Plaintiff's predecessor in interest, the Central Pacific Railroad Company, was a land-grant road. The grant embraced the lands here in question, and under its provisions, was inoperative as to all mineral lands, and all lands which at the time the line of railroad was definitely fixed had been claimed for pre-emption, homestead, or sold, reserved, or otherwise disposed of by the United States. The plaintiff railway company and its predecessors in interest complied with all the requirements of the statute, and on the 27th of September, 1915, filed its selection list, in which was included all of section 5. The list was certified by the register and receiver of the local land office as correct, and transmitted to the Commissioner of the General Land Office for consideration and patenting of the lands included in the selection. Subsequently the Commissioner ordered "adverse proceedings" against the plaintiff as to the S. W. ¼ of section 5, in respect of which a special agent of the Land Office had reported the land as mineral in character and containing valuable deposits of manganese.

An investigation followed, which resulted in an agreement between plaintiff and the

Land Department to the effect that the S.½ and the W. ½ of the N. W. ¼ of the S. W. ¼ was mineral in character, leaving as nonmineral and subject to clear list the N. E. ¼ and the E. ½ of the N. W. ¼ of the S. W. ¼ of section 5.

The Commissioner of the General Land Office refused to clear-list or issue patent for these nonmineral portions, and held the entire N. W. ¼ of the S. W. ¼ for cancellation. This was done, notwithstanding that the Commissioner himself had found the E. ½ of the N. W. ¼ of the S. W. ¼ to be nonmineral and had previously ordered it to be clear-listed.

The sole question for consideration is the right of plaintiff railway company to claim the half of the 40-acre subdivision here in question, which it is agreed is nonmineral in character. The department insists that it is not required under the law to patent to the railway company a tract containing less than 40 acres, the minimum subdivision recognized under the government surveys. Half of the 40-acre tract in question is clearly nonmineral, and the half of it is mineral. Is the railway company entitled under its grant to a patent for the nonmineral 20-acre tract?

It has been held that the Secretary of the Interior has discretion to enforce the rule here contended for in respect of the selection of indemnity lands. In Southern Pacific Railroad Co. v. Fall, 257 U. S. 460, 42 S. Ct. 147, 66 L. Ed. 316, the court, affirming the decision of this court (49 App. D. C. 241, 263 F. 637), held that as to indemnity selections it is within the discretionary power of the Secretary to require the selection lists to conform to the regular subdivisions, as shown by the government survey. But this requirement is based solely upon the authority of the Secretary to establish reasonable rules and regulations with respect to the selection of indemnity lands. These selections are made from lands already surveyed, and subject to selection under a special grant from the government. The original land grant to plaintiff's predecessor was a grant in præsenti, whereby the title vested at the time of the grant and before the lands conveyed had been surveyed. But when survey was made, and identification lists were prepared, the act provided for the passing of title from the government to the railway company for all lands embraced therein, not specially excepted as mineral, etc.

Unquestionably, if the railway company had relinquished the lands in controversy, and the relinquishment had been accepted by the Secretary, then it would subject itself to the rules of the department in respect of making an indemnity selection; but that is not this case. The railway company refuses to relinquish land to which it unquestionably has title, and insists upon its right to have the evidence of title delivered to it in the form of a patent. Clearly no power lies in the government to compel relinquishment; lacking that power, the government likewise lacks the power to refuse the issuance of a patent.

We are content to rest our decision upon the very able opinion of the learned justice in the court below, as follows:

"Upon this statement of what appears to be the admitted facts in the case, the court is called upon to determine whether the predecessor of the plaintiff, on compliance with the terms of the congressional grant, did or did not acquire a title and the right to all lands in section 5 which were not mineral in character and which had not been sold, reserved, or otherwise disposed of by the United States, and to which no claim of pre-emption or homestead had attached at the time the line of the railroad was definitely fixed. It is the court's opinion that the predecessor of the plaintiff did acquire such right and title, and that, at the time the plaintiff filed its selection list, that right and title had passed to and was vested in the plaintiff. To hold otherwise would simply mean the reading into the statutory grant or contract a condition or reservation not therein specified. If Congress intended to reserve out of the grant the whole of a 40-acre subdivision in case part of it was mineral, Congress could have so declared. The statutory grant not having so provided, the courts cannot amend it, and must construe it as it was finally passed. Congress must be presumed to have meant neither more nor less than what it said in plain and unambiguous language, and, as the court sees it, there is no more legal justification for excluding from the grant an entire 40-acre subdivision because of the presence of mineral in half of it than there would be for excluding a quarter section or a whole section because of the presence of mineral in half thereof.

"If the contention of the government be sound, just what is to become of the nonmineral part of the N. W. ¼ of the S. W. ¼ after the mineral part thereof has been disposed of as prescribed by law? If the nonmineral part of the N. W. ¼ of the S. W. ¼ cannot be patented to the plaintiff, by what process of sound reasoning can it be patent-

ed to somebody else, and if it can be patented to somebody else, why not to the plaintiff, to whose predecessor in interest it was granted? Half of the tract is clearly nonmineral and half of it mineral; how, then, can it be said that the whole tract must be regarded as mineral rather than as nonmineral? If it be proper to say that the whole piece is mineral, because half of it is mineral, is it not equally correct to say that the whole subdivision is nonmineral, because half of it is nonmineral?

"Counsel for the government admits that the nonmineral fraction of the N. W. ¼ of the S. W. ¼ can be disposed of by the government after it has been officially declared to be a lot and given its appropriate number. If it can be so disposed of, then why not give it a lot number and recognize the rights of the plaintiff and the terms of the grant?

"But, however that may be, for 44 years the Department of the Interior has approved many lists embracing tracts less than 40 acres in extent, thereby establishing a long-continued administrative practice and an interpretation of the statutes here involved which ought not to be disturbed at this late day. Oregon, and Cal., R. R. Co. v. Puckett, 39 Land Dec. 169; Central P. R. R. Co. v. De Rego, 39 Land Dec. 288; Victor Portland Cement Co. v. Southern P. R. Co., 43 Land Dec. 325; Southern Pac. Ry. Co., 46 Land Dec. 279. To disregard that practice and that interpretation would result in clouding titles and bring about endless confusion, with no resulting benefit, other than the doubtful one of simplifying administration and the returning to the public domain of lands which may have been unwisely granted.

"Counsel for the department argues that a regulation of the Secretary of the Interior, providing that, in the selection of lands under railroad land grants, a part only of a minor legal subdivision shall not be assigned, unless the rest of it be also assigned in the same selection list, is not an arbitrary abridgment or obstruction of the right of selection. So. Pacific Ry. Co. v. Fall, 257 U. S. 460, 42 S. Ct. 147, 66 L. Ed. 316. That argument is sound as to lands which the law authorizes the grantees to select to make good 'losses'; that is to say, lands excepted out of the original grant, and to which no title is given by the grant. It is not sound as to lands to which the grantee acquired title by an express statutory contract. In other words, the right to acquire title is subject to reasonable regulation by the department, and,

as lieu selections stand on the same basis as the right to purchase or enter, they are subject to reasonable regulation. The curtailment of the right to select for the acquisition of a title is one thing, and the curtailment of a title which has vested is something else.

"The Secretary's power to supervise does not clothe him with any discretion to enlarge or curtail the rights of the grantee, or to substitute his judgment for the will of Congress as manifested in the granting act. Payne v. Cent. Pacific Ry. Co., 255 U. S. 228, 236, 41 S. Ct. 314, 65 L. Ed. 598. His attempt to cancel a valid selection of lands granted to plaintiff's predecessor amounted to an unauthorized exercise of power and casts a cloud upon plaintiff's title which warrants the relief prayed for. Ballinger v. United States, 216 U. S. 240, 248, 249, 30 S. Ct. 338, 54 L. Ed. 464."

The decree is affirmed, with costs.